AERIAL LEAGUE OF AMERICA, A CORPORATION, ETC., RE-
SPONDENT, v. AIRCRAFT FIREPROOFING CORPORA-
TION, A CORPORATION, ETC., APPELLANT.

Argued March 8, 1920—Decided June 19, 1922.

1. To obligate a corporation upon a contract, it must be proven
   that the contract was the act of the corporation, either by cor-
   porate action, the act of an authorized agent, or by adoption and
   ratification.
2. An officer or agent of a corporation can only bind the corpora-
   tion to the extent that the power to do the act in question has
   been expressly conferred upon the officer or agent by the charter,
   by-laws or corporate action of its stockholders or board of di-
   rectors, or can be implied from the powers expressly conferred
   or which are incidental thereto, or where the act is within the
   apparent powers which the corporation has caused those with
   whom its officers or agents have dealt to believe it has conferred
   upon them.

On appeal from the Atlantic County Circuit Court.

For the respondent, *Clarence L. Cole.*

For the appellant, *Arthur T. Dear (Richard Boardman,* of
counsel).

The opinion of the court was delivered by

KATZENBACH, J.   This is an appeal from a judgment
entered on the verdict of a jury in the Atlantic County
Circuit Court in an action commenced by attachment.   The
plaintiff below was the Aerial League of America, a corpora-
tion, which held from May 20th to May 30th, 1920, an
æronautic exposition on the Steel Pier at Atlantic City.
The defendant below was the Aircraft Fireproofing Corpora-
tion, a company engaged in the manufacture and exploitation
of a material for fireproofing airplanes.   On May 1st, 1920,
one Charles W. Kerwood, an employe of the defendant,
called at the New York office of the Aerial League and saw

its president, Henry Woodhouse, and inquired about space upon the Steel Pier during the exposition for an exhibit of parts of an airplane which the defendant was building. Woodhouse produced a plan of the available space and Kerwood selected one hundred and fifty square feet of space, for which the price was $300. Kerwood took the plan, or a copy, with him and also a written contract, and on May 4th returned with a check for $300, made by the Aircraft Corporation, and the contract executed by the company. These were delivered by Kerwood to Woodhouse. On the following day Kerwood again called on Woodhouse and inquired about space sufficient to exhibit the airplane. He expressed the desire to have the platform of the Aeronautic Hall, a space of one thousand six hundred square feet, the rental value being $1 per square foot, and requested the privilege of canceling the executed agreement and applying the $300 paid thereunder upon the price of the new space. Kerwood took with him a contract for the new space, which it was intended, as Woodhouse testified, should be signed and executed by the defendant. The second contract was not signed. Kerwood told Woodhouse on several occasions that the treasurer of the Aircraft Corporation would get the check and sign it when he came to Atlantic City. Woodhouse had no conversations with anyone connected with the defendant company other than Kerwood. The second contract was never signed, no money paid for the space, and the space was not used during the exposition by the Aircraft Corporation. The airplane of the defendant was exhibited at Atlantic City at what was known as the "Airport," under arrangements with the Curtiss Flying Station.

The complaint alleges an oral agreement for the one thousand six hundred feet of space made between Woodhouse, as agent of the plaintiff, and Kerwood, as agent of the defendant, modifying the written agreement of May 4th, 1920. The defence was that Kerwood had no authority from the defendant to modify the written contract or to make a new contract for the one thousand six hundred square feet of space.

It was incumbent upon the plaintiff to show that the contract upon which suit was brought was the contract of the defendant. To bind the defendant the contract must be proven to have been the act of the defendant either by corporate action, the act of an authorized agent, or by adoption and ratification. *Beach* v. *Palisade Realty and Amusement Co.,* 86 *N. J. L.* 238. A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them. It often results that one occupying a high official position in a corporation is without power to bind the corporation by contract. Thus in the case of *Thomson* v. *Central Passenger Railway Co.,* 80 *Id.* 328, a president of a corporation was held to have had no authority to bind the corporation by the contract therein considered. To the same effect is *Mausert* v. *Feigenspan,* 68 *N. J. Eq.* 671. In *Beach* v. *Palisade Realty and Amusement Co., supra,* a second vice president of a corporation was held to have had no authority under a power to sign contracts in connection with the improvement, operation and maintenance of Palisade Park as an amusement enterprise, to make a contract for the purchase of the corporation's own stock and bonds. In *Stokes* v. *New Jersey Pottery Co.,* 46 *N. J. L.* 237, a president of a corporation was held to have no power to give a bond and warrant to confess judgment against the corporation. In *Titus* v. *Cairo and Fulton Railroad Co.,* 37 *Id.* 98, a power of attorney to sell the railroad company's bonds, signed by the president, was held invalid. These cases suffice to show that one dealing with a corporation must be apprised of the powers of the officers or agent purporting to act for the corporation if he seeks to make a contract which will bind the corporation.

The evidence offered by the plaintiff of the authority of Kerwood to bind the defendant consisted of the testimony of Woodhouse, to which reference has already been made, a clause in the executed contract reading: "In accordance with the rules and regulations governing this exhibit the authorized representative of the party of the second part will be L. A. Hartshorn and as alternative Charles W. Kerwood," and an answer made by a witness for the defence, L. A. Hartshorn, assistant treasurer of the defendant company, to the effect that he had authority to send Kerwood to Woodhouse.

The defendant proved by its assistant treasurer that Kerwood was hired as a pilot or operator to test and exhibit its planes, and that when not so engaged, he did the work of a messenger of the company; that he had no express authority to modify the written contract of May 4th or make a new contract for the one thousand six hundred square feet of space. The testimony of Woodhouse shows that when the contract for the one hundred and fifty square feet of space was broached that Kerwood only secured the information with respect to the space and the price and then left the office of the plaintiff corporation with a form of contract, ostensibly for the purpose of reporting to his superiors and having them dispose of the matter. Three days later Kerwood returned with the contract executed and a check in payment of the space taken under the contract. It would seem as if there could be no stronger evidence of Kerwood's lack of power to make a contract for the defendant than the course taken by him after his first interview with Woodhouse. In the later interview between them with reference to the renting of the one thousand six hundred square feet of space much the same course was pursued as Kerwood left, as Woodhouse says, after engaging the space, with a contract to be signed by his company, and returned with a check for $1,300. The fact that the contract was not signed, the check not delivered and the space not used leads to the conclusion that either Kerwood's suggestion carried little, if any, weight with his superiors, or that he had not the courage to report to those in authority

his interview with Woodhouse. The fact that in the executed contract Kerwood's name is mentioned as an alternative representative of the defendant conveys no authority to modify the contract, as the purpose of such a designation is merely to give to the lessor the names of the persons representing the lessee and with whom the lessor can confer with reference to any question arising concerning the lessee's exhibit. Neither does the fact that Hartshorn testified that he had authority to send Kerwood to Woodhouse confer power on Kerwood to make the alleged agreement in view of the testimony of Hartshorn that Kerwood had been given no authority to act and also the records of the company, which showed that no authority to make the contract had been given Kerwood by corporate action. We have carefully reviewed the testimony taken in this case and find in it no evidence of any authority given by the defendant corporation to Kerwood, either to modify the written contract of May 4th or to make a new contract. There being no evidence of Kerwood's power to bind the defendant corporation for the one thousand six hundred square feet of space, it follows that the trial judge should have granted the defendant's motion to direct a verdict for the defendant and not permitted the case to be submitted to the jury. To have denied the motion, as he did, was error.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ.   15.