ERIE RAILROAD COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT, v. S. J. GROVES & SONS COMPANY, A CORPORATION, DEFENDANT, AND LIBERTY SURETY BOND INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued February 16, 1933—Decided April 27, 1933.

For the defendant-appellant, *Edwards, Smith & Dawson.*

For the plaintiff-respondent, *Hobart & Minard.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered on an order made by Judge Brown sitting in the Hudson Circuit of the Supreme Court, as a Supreme Court commissioner, striking out the answer of the defendant Liberty Surety Bond Insurance Company (hereinafter referred to as Surety Company) on the ground that it was sham, and ordering summary judgment entered against said Surety Company for $25,000.

Briefly the facts are that S. J. Groves & Sons Company (hereinafter referred to as Groves Company), a foreign corporation, was engaged in the construction of a portion of a new state highway near Homestead, Bergen county, New Jersey.

By crossing the railroad of the Erie Railroad Company (hereinafter referred to as Erie Company), the Groves Company could save a two-mile haul in making its fill.

J. B. Mathews, in charge of the construction of the road as job superintendent for Groves Company, entered into negotiations with the representative of the Erie Company, for permission to construct and use, in carrying out its contract, a private, temporary crossing over its railroad.

It was finally agreed that this permission would be granted under certain conditions, one of which was that Groves Company should execute the standard license agreement which the

Erie Company had for such purposes, and furnish an indemnity bond and subscribe to certain other conditions. There was some delay about getting the license agreement signed and furnishing the bond. The Groves Company was in a hurry to make use of the crossing and it was agreed to start the work of constructing the crossing at once, provided the Groves Company write the Erie Company a letter, embodying the terms verbally agreed upon.

Mathews accordingly wrote a letter to the Erie Company under date of October 15th, 1928, from the Groves Company's office (which had been set up at Ridgefield, New Jersey) upon the stationery of the Groves Company in which, among other things, he (purporting to speak for Groves Company) agreed that the crossing was to be constructed at the expense of the Groves Company and that Groves Company would assume the expense of a watchman at the crossing and would agree to assume full liability for the acts or negligence of said watchman and indemnify the Erie Company and New York, Susquehanna and Western Railroad Company for any damage to property or loss of life arising through the neglect of this watchman; and would agree to furnish a bond for $25,000 as a guarantee of indemnity to the Erie Company for any loss, damage to property or injury to persons arising out of the construction, use and removal of the crossing, and would sign the standard form of license agreement, &c.

This letter was signed "S. J. Groves & Sons Co.,

By J. B. Mathews."

It was delivered to and received by the Erie Company. A bond dated November 2d, 1928, was delivered by Mathews to the Erie Company on or about November 13th, 1928. In the body of this bond it was stated that the Groves Company, as principal, and the Surety Company, as surety, were held and firmly bound, jointly and severally, unto the Erie Company, obligee, in the sum of $25,000.

The condition of the bond read:

"That whereas, said principal has entered into an agreement dated October 15th, 1928, for construction of temporary private crossing over the Erie Railroad Company's tracks,

and New York, Susquehanna and Western Railroad Company's tracks.

Now, therefore, if the said S. J. Groves & Sons shall indemnify and save harmless the said obligee against any loss, damage to property or injury to persons arising out of the construction, use or removal of private crossing aforesaid, then this obligation shall be void, otherwise to remain in full force and effect."

The bond is signed "F. M. Groves, Pres.," opposite a seal on which appears the following impression: "Corporate Seal S. J. Groves & Sons Company, Minneapolis, Minn."

It is also signed by the appellant as follows: "Liberty Surety Bond Insurance Company by Frank W. Stucky, Attorney-in-Fact," with the corporate seal attached.

Shortly thereafter the crossing was built, and in accordance with the terms of the agreement of October 15th, 1928, the Erie Company placed a crossing watchman on duty at that point; his wages were paid in the first instance by the Erie Company; bills for the same were submitted each month to Groves Company for reimbursement for his salary and were paid by check of Groves Company.

On February 16th, 1929, an accident occurred at this crossing due to the negligence of the watchman. Suit was brought by the injured person against the Erie Company to recover damages. Notice was promptly given by the Erie Company to Groves Company but the latter refused to defend.

The case went to trial and resulted in a judgment against the Erie Company for $49,969.73. After the affirmance of this judgment the Erie Company paid same and thereafter brought the present action.

There are two counts in the complaint, in the first of which the Erie Company asks for $49,969.73 judgment against the Groves Company, to reimburse the Erie Company for the amount paid by it to the plaintiff in the accident suit. This count is based upon the agreement of Groves Company as embodied in the letter of October 15th, 1928.

The second count is directed against the Surety Company on the bond and asks for the penalty thereof of $25,000.

Groves Company answered, denying that it executed and delivered the bond, because (as set forth in defendant's affidavits) the bond, instead of being signed by Frank M. Groves, its president, was signed by a clerk in the office, in the name of F. M. Groves, president, without authority. However this may be, it is a fact that the Groves Company accepted the benefits of the undertaking and used the crossing until the month of June, 1929, and then paid the expenses of its removal. There may be a question of fact, however, as to whether or not Groves Company was bound by the signature and if not, whether it obligated itself by adoption and the ratification of the agreement implied from acquiescence of the benefits with knowledge of the facts.

The plaintiff moved to strike out both answers and asked for summary judgments.

There being proof tending to sustain the allegations and defenses of the Groves Company that neither the agreement of October 15th, 1928, nor the bond, were authorized or ratified, Judge Brown properly denied the motion as to Groves Company. This appeal is directed to his ruling, striking out the answer of the Surety Company.

As to the Surety Company a different legal question is presented from that in the answer of the Groves Company.

The decision of the case as presented to us seems to lie within a very narrow compass. The principal defense made by the Surety Company is that it was surety to an alleged contract by the Groves Company which, as it claims, is not a valid contract and therefore, so it is argued, the principal not being liable the surety cannot be held. But the cases seem to hold that even if the bond was neither authorized nor ratified by Groves Company, the Surety Company is nevertheless liable to the extent of the face amount of the bond.

Judge Brown, in his memorandum, cited the case of *Wagoner* v. *Watts*, 44 *N J. L.* 126, affirmed by this court on the opinion below, in 45 *Id.* 184, where the principal defendant was a married woman and signed a lease as such, and the court held that even though she could not be held, the covenant of her surety was enforceable.

A discussion of this question is found in 2 *Williston on Contracts,* §§ 1213, 1214. We quote from the latter:

"* * * Therefore, if the principal debtor was incapable of contracting because of coverture, the surety will, nevertheless, be liable. The rule is the same where the principal debtor has the defense of infancy, insanity, *ultra vires;* or where there is any apparently valid but in fact defective obligation of the principal, or such an alteration of a written contract prior to its execution by the surety as discharges the principal."

We approve this rule and consider it applicable to the instant case.

Counsel of the Surety Company argues that the bond was placed in the hands of the Groves Company in escrow so far as the Surety Company was concerned and was to be delivered only when properly executed by the principal, that the burden was on plaintiff to prove (a) execution and (b) delivery. The defense is that it was not executed and/or delivered.

The proofs were that counsel for defendant, upon demand of the plaintiff, pursuant to the Practice act, admitted in writing the execution of the bond.

It is now argued that execution means merely signing and sealing and does not include delivery and that, therefore, it is open to the Surety Company to deny delivery, or at least to plead delivery only in escrow, or what might be called a partial delivery.

This contention might well be disposed of by saying that there is no suggestion in the record that these points were ever raised in the court below. A reviewing court will not ordinarily consider questions that were not presented to the trial court. We might say, however, that we do not agree in the limited meaning placed by counsel of appellant upon the word "execution."

In Bouvier's Law Dictionary it is said that a deed is executed when it is signed, sealed and delivered, and this appears to be the prevailing view. See 23 *C. J.* 278, 279, where it is said in a technical sense the word necessarily includes the performance of three acts which are signing, sealing and

delivery. Colloquially no doubt a more restricted meaning is often intended.

The Practice act of 1912 (section 18) provides that any party may call upon any other party by written notice, to admit (but only for the purposes of the cause), the existence, due execution, signing or mailing of any document, and that in case of refusal the costs of proving same shall be paid by the party so notified. We consider that when the defendant admitted the execution of this paper in writing, it admitted what was necessary to enable the obligee to take advantage of it and that this necessarily included unconditional delivery.

Judge Brown, in granting the motion to strike out the Surety Company's answer and enter summary judgment against it, very succinctly and correctly stated the law applicable to this case. He said:

"The Surety Company admits the execution of the bond by that company. This company contends, however, that the unauthorized signing of the crossing letter and later the bond not being the act of the Groves Company, the surety cannot be held. Assuming this contention well made the surety cannot benefit by those defenses because the surety undertook jointly and severally to perform the conditions of its bond, and in any event, though the principal may be released because of the alleged defective execution of the bond on its part; nevertheless, the surety can be held liable."

With this deliverance we are in accord, and are of the opinion that the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.