ERIE RAILROAD COMPANY, PLAINTIFF-APPELLANT, v. S. J. GROVES & SONS COMPANY, DEFENDANT-RESPONDENT.

Argued October 23, 1934—Decided January 10, 1935.

For the appellant, *Hobart & Minard*.

For the respondent, *Wright, Vander Burgh & McCarthy*.

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment in favor of the respondent, defendant below, and against the appellant, plaintiff below, which judgment was based on a jury verdict.

One phase of this suit, based on the second count thereof, was against the Liberty Surety Bond Insurance Company, a corporation of this state, as surety for respondent in the premises. It resulted in a judgment of $25,000 in favor of the appellant and against the surety; and that judgment was affirmed by this court (111 *N. J. L.* 100; 166 *Atl. Rep.* 205).

The other phase of this suit, based on the first count thereof, is now before us. On this count plaintiff sought to recover

of the defendant the difference between the $25,000 recovered on the second count aforesaid, and the sum of money it paid to Howard C. Firth on the judgment recovered by him against it, which difference amounted to $33,592.41. The basis for this recovery was the purported letter of the respondent under date of October 15th, 1928; the details thereof as well as a general statement of the subject-matters in controversy are sufficiently stated in the cited case.

Respondent's answer to the instant suit, with the exception of the admission of the first paragraph thereof which relates to the corporate existence, &c., of appellant consisted of a denial of the allegations of the complaint, based on the purported execution and liability under the terms and provisions of the letter dated October 15th, 1928, and the separate and distinct defense (first), "that the alleged agreement set forth in the complaint was not the act and deed of this defendant."

The learned trial judge, in a charge that was instructive, fair and correct, submitted the issues involved, and the law applicable thereto, to the jury. The latter, as already stated, found for the respondent.

That finding, although no adverse criticism is made of the correctness of the legal principle as charged by the trial judge, is now challenged on the grounds: (1) that, "the trial judge should have held *as a matter of law* that the contract upon which the action was based was signed by an agent of the defendant who had apparent authority so to do;" and (2) that, "whether or not defendant's agent had apparent authority to sign the contract upon which the action was based, the trial judge should have ruled *as a matter of law* that said contract was ratified by the defendant."

Our careful study of all the proofs in the case leads us to the conclusion that the contentions of the appellant are without merit.

It is, of course, the well settled law of this state that in order to obligate a corporation upon a contract:

"It was incumbent upon the plaintiff to show that the contract upon which suit was brought was the contract of the

defendant. To bind the defendant the contract must be proven to have been the act of the defendant either by corporate action, the act of an authorized agent, or by adoption and ratification. *Beach* v. *Palisade Realty and Amusement Co.,* 86 *N. J. L.* 238.

"A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them." *Aerial League of America* v. *Aircraft, &c., Corp.,* 97 *N. J. L.* 530, 532; 117 *Atl. Rep.* 704, 705, and cases therein cited. And "the rule is that the principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case depending upon the apparent authority of the agent is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; and when, as here, the party, relying upon such apparent authority, presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury. *J. Wiss & Sons* v. *H. G. Vogel Co.,* 86 *N. J. L.* 618." *American Well Works* v. *Royal Indemnity Co.,* 109 *Id.* 104, 108; *Burlew* v. *Brockway Motor Truck Corp., Ibid.* 567, 569.

Great stress in the instant case is laid on the apparent authority of Matthews and in support thereof there is cited his action on May 4th, 1928, wherein he conducted the preliminary arrangements for one other crossing—designated as the Morsemere crossing. The difficulty with this contention is two-fold; first, that it cannot be said, as a matter of

law, that one other instance, in itself, is a matter arising in the usual course of business within the holding of the many cases of our state of which *Kuebler* v. *Koehler Motors Corp.,* 100 *N. J. L.* 163, is typical; and, second, the facts in the Morsemere job are altogether unlike the facts in connection with the Homestead job for which the letter of October 15th, 1928, was written. The following are some of the differences and they are persuasive. On the Morsemere job, Matthews, who, also, wrote the preliminary letter asking for the crossing, signed it as superintendent of the respondent company; on the Homestead job he merely signed his name in his individual capacity; on the former job a formal license agreement was signed by the proper officers of the respondent company; no such agreement was signed on the latter job. As a matter of fact, all of the officers of the respondent company denied the authority of Matthews to sign the letter in question and disclaimed any knowledge of his having done so until the claim of Firth was made. Moreover, it is urged that, on the Morsemere job, it was absolutely essential to obtain a private crossing in order to do the necessary work thereon, whereas on the Homestead job such a crossing was never contemplated; Matthews, alone, it is said, thought of it and arranged for it because he was of the opinion that it would shorten the haul. It appears to us, therefore, that the apparent authority of Matthews could not, as a matter of law, be spelled out of his action or conduct on the Morsemere job, or otherwise; it was clearly a jury question.

We now approach the second contention: Was the alleged contract ratified by the respondent company? Much of what has already been said, factually and legally, applies with equal efficacy to this question. Whether the alleged contract was ratified, we think, under the proofs herein, also raised a jury question. An enlightening discussion of this subject (ratification) is found in the opinion written for this court by Chancellor Campbell, in the case of *Stammelmann* v. *Interstale Co.,* 112 *N. J. L.* 342.

It may be well to note that it is, also, the well recognized law of this state that ratification may be implied from acquiescence or the acceptance of such a contract. *Feist &*

*Feist* v. *A. A. Realty Co.,* 105 *N. J. L.* 461; see, also, *Shaten* v. *American National Bank of Camden,* 109 *N. J. Eq.* 307.

It will serve no useful purpose to detail the many and various items of proof that appellant introduced to the end of establishing a ratification of the contract on the part of the respondent by reason of the acquiescence in or the acceptance of the benefits of the purported contract. It is true that appellant introduced many vouchers of the respondent company showing the payment of watchman's wages, and, other vouchers representing payments for other expenditures incident to this private crossing; journal sheets showing these payments were shown to have been sent to the Minneapolis home office of the respondent company; officers of the respondent were shown to have visited the job during its progress and they saw this crossing, &c. But, for the respondent, as already stated, each officer and director specifically denied any authority on the part of Matthews to write the letter in question, or that they had any knowledge of the fact that such a letter had been written until after claim was made for the Firth accident, or that the subject-matter of the letter was ever brought to the attention of the board of directors of the respondent company, or that the officers who visited the job during the progress thereof, knew of the purported arrangement as a result of which the crossing was used, &c.

Under this divergence of the proofs it was clearly the duty of the trial judge to do as he did, namely, submit the case to the jury for their consideration. True that the jury might well have found for the appellant, but, unfortunately for the appellant, they found, as they could likewise well find, for the respondent. Under such circumstances that finding, being free from any other reversible error, is controlling.

Accordingly judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, JJ. 12.

*For reversal*—VAN BUSKIRK, WELLS, JJ. 2.