THOMAS FONTANA, PLAINTIFF-APPELLEE, v. POLISH NATIONAL ALLIANCE OF BROOKLYN, U. S. A., ALSO KNOWN AS ZJEDNOCZENIE POLSKA NARODOWE, DEFENDANT-APPELLANT.

Argued October 6, 1942—Decided February 26, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Aldon S. Patlen.*

For the appellee, *Feder & Rinzler.*

The opinion of the court was delivered by

PERSKIE, J. This is a suit for commissions in effecting a sale of real estate. It is based upon an alleged oral agreement between plaintiff and defendant company. The basic question requiring decision in this case is whether the trial

judge erred, as claimed, in holding that plaintiff had properly established his asserted claim for commissions pursuant to the provisions of the second paragraph of our Statute of Frauds (*N. J. S. A.* 25:1-9), which provides:

"Any broker * * * selling * * * real estate pursuant to an oral agreement with the owner of such real estate, who shall actually effect such sale * * * before such oral agreement shall have been repudiated or terminated by the owner in writing * * * may recover from such owner the amount of commission on such sale * * * if the broker * * * shall, within five days after the making of the oral agreement and prior to the actual sale * * * of such real estate, serve upon the owner a notice in writing, setting forth the *terms* of the oral agreement and stating *the rate or amount of commission* to be paid thereunder, and if the owner shall not have repudiated or terminated the oral agreement prior to the actual sale * * * of the real estate." (Italics supplied.)

It was open to the trial judge, who sat without a jury, to find substantially the following facts from the record submitted: Plaintiff is a duly licensed real estate broker of this state. Defendant company was the owner of the property 122 Wood Street, Garfield, New Jersey. Plaintiff inquired orally and in writing from defendant company through its president whether this property was for sale and upon being advised that it was for sale at $11,500 wrote to the defendant company making an appointment for its president to call on plaintiff, at his offices, on November 13th, 1939, to meet plaintiff's prospective purchaser. Prior to introducing the prospective purchaser to the president of defendant company, the plaintiff made clear to him that he, plaintiff, "worked on a 5% commission" and he was told by the president not to worry about that, "You will get your commissions, if these people purchase the property," and that if the property was sold for less than the asking price of $11,500 the plaintiff would receive 5% of the sale price, whatever the "price was." Immediately thereafter plaintiff and the president of the defendant company called upon a Mary Myl, plaintiff's prospective purchaser. The sale was not consummated at that

time although the prospective purchaser made an offer and plaintiff was told to "continue working" and to see what he could do. Immediately after this conference the plaintiff sent the following letter, "by registered mail," to the "last known post-office address" of defendant company (fourth paragraph of *N. J. S. A.* 25:1-9), which through an agent signed a receipt therefor:

"November 13, 1939.

Polish National Alliance,
142 Grand Street,
Brooklyn, N. Y.

Gentlemen: Attention: Mr. Antoni Rusyn.

This letter is with reference to the sale of property at 122 Wood Street, corner of Lanza Avenue, Garfield, N. J., in which case you have met the prospective purchasers, Mrs. M. Myls, on Monday afternoon, November 13, 1939. I wish to advise you that after you had left her store, she told me that she would be interested in talking business, sometimes next week, as she wanted to take up the matter with her husband, first.

The price quoted to her for the property is 11,500; the terms, of course, to be subject to your approval. Should Mrs. Myls call on you personally, you will know that this came about through my efforts. Should the above mentioned prospect purchase your property, I shall be entitled to the usual commission of five (5%) per cent of the sale price.

Trusting a sale will materialize, I am,

Very truly yours,

TF:mvo.
Registered."

At no time did the defendant company or its president in anywise repudiate or terminate the oral agreement set forth by plaintiff in his registered letter (third paragraph of *N. J. S. A.* 25:1-9). Several months later plaintiff and the president of defendant company met. At this meeting plaintiff was told to "keep away" from Mary Myl, the prospect, but that if she should purchase the property he (plaintiff) would receive a commission of 5%.

Defendant company thereafter sold the property to plain-

tiff's prospective purchaser for $9,500 and upon demand refused to pay plaintiff the agreed 5% commission on the sale price. Upon the facts so found, the trial judge entered a judgment of $475 in favor of the plaintiff and against defendant company. Hence this appeal.

1. We do not, of course, reverse on findings of fact supported by evidence. *N. J. S. A.* 2:32-202. *Cf. Lewis* v. *V. LaRosa & Sons, Inc.,* 128 *N. J. L.* 474, and cases there cited, 26 *Atl. Rep.* (*2d*) 879. There is ample proof to support the finding below that the defendant company was bound by the acts of its president upon the principle of apparent authority (*Cf. Erie Railroad Co.* v. *S. J. Groves & Sons Co.,* 114 *N. J. L.* 216, 219; 176 *Atl. Rep.* 377), that plaintiff, relying upon such apparent authority, did, pursuant to "the stated oral agreement," "actually effect" a sale of defendant's property, and that plaintiff was the "efficient" or "procuring" cause of the sale. *Cf. Houston* v. *Siebert* (*Court of Errors and Appeals*), 129 *N. J. L.* 468; 30 *Atl. Rep.* (*2d*) 35.

2. Does the letter from plaintiff to defendant company under date of November 13th, 1939, sufficiently satisfy the quoted provisions of our statute of frauds? Our answer is in the affirmative.

Much is made of the fact that the letter does not state, in so many words, that it is sent "pursuant to an oral agreement" with defendant company. This lacks merit. The letter does state in substance "the terms of the oral agreement," and states the "rate * * * of commission to be paid thereunder." (*N. J. S. A.* 25:1-9.) In short, it "identifies the property and states the price and the rate of commission." That is sufficient. *Rooney* v. *Greiner,* 3 *N. J. Mis. R.* 996, 997; 130 *Atl. Rep.* 456. Defendant relies strongly upon the holding in the case of *Soloff* v. *Atlantic Coast Building and Loan Association,* 10 *N. J. Mis. R.* 1150; 162 *Atl. Rep.* 718; *affirmed,* 110 *N. J. L.* 528; 166 *Atl. Rep.* 163. In that case the letter of the broker neither stated the terms of the oral agreement, if any existed, nor the purchase price, nor the rate or amount of commission to be paid. All the broker's letter stated was that he had submitted a certain property just purchased by the Association to a named person and

"in the event a sale is made" (presumably to the named person) he would expect "the usual brokerage commission." That case is clearly distinguishable from the case at bar.

3. We have carefully examined all challenged rulings as to the exclusion of certain proposed questions and find that no substantial right of defendant has been injuriously affected thereby.

Judgment is affirmed, with costs.